Mark F. Anderson (SBN 44787)
Anderson, Ogilvie & Brewer LLP
235 Montgomery Street
Suite 914
San Francisco, CA 94104
Ph: (415) 651-1951
Fax: (415) 500-8300
mark@aoblawyers.com

Attorneys for Plaintiffs Eric H. Lovejoy and Carolyn B. Lovejoy

FILED
APR 10 2013
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Eric H. Lovejoy and Carolyn B. Lovejoy,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>Bank of America, N.A.;<br><br>　　　　　Defendant. | Case No. CV 13 1638 DMR<br><br>COMPLAINT<br><br>(Fair Credit Reporting Act<br>15 USC § 1681 et seq)<br><br>DEMAND FOR JURY TRIAL |

**Preliminary Statement**

1.　This is an action for damages brought by individual consumers Eric H. Lovejoy and Carolyn B. Lovejoy against Bank of America, N.A. for violations of the Fair Credit Reporting Act, 15 USC §1681 *et seq*. (FCRA) and the California Consumer Credit Reporting Agencies Act, Civil Code § 1785.25(a)-(c).

**The Parties**

2.　Plaintiffs Eric H. Lovejoy and Carolyn B. Lovejoy, are husband and wife.

3. Defendant Bank of America, N.A. is a business entity that regularly conducts business in this district. The bank's activities are subject to the terms of the FCRA and the California Civil Code.

**Jurisdiction & Venue**

4. The court has federal question jurisdiction over the FCRA claims pursuant to 15 USC §1681p and supplemental jurisdiction over the California Civil Code claims pursuant to 15 USC § § 1367.

5. The alleged violations arose in part in this district, which is where Plaintiffs reside.

**Description of the Case**

6. Plaintiffs formerly owned a single family residence in South Bend, Indiana, purchased as an investment. By 2010, the defendant bank serviced the two loans on the property that were secured by a 1st and 2d deed of trust. The loans were owned by the Federal National Mortgage Association (Fannie Mae).

7. As of August 2010, the property value had decreased to the point plaintiffs could not sell it without coming up a large amount of cash.

8. To dispose of the property and get out of debt, plaintiffs began negotiations with defendants in August 2010. Negotiations on behalf of the bank were handled by bank employee Kevin Sabey, a Short Sale Deed In Lieu Specialist, who worked in Bank of America's Westlake Village, CA mortgage center.

9. Eventually, the bank agreed to accept a Deed In Lieu of Foreclosure (DIL).

10. On February 22, 2011, the bank sent plaintiffs instructions outlining what plaintiffs needed to do to move forward with the DIL as to both loans. The instructions each stated that if plaintiffs complied with various conditions, the bank and its investors "will waive the remaining balance due on the above referenced loan and release the borrower from further obligations therein,

and waive all rights to pursue further judgment or deficiency. The bank further stated it would report the debt as "deed received in lieu of foreclosure on a defaulted mortgage."

11. The February 22 instruction concerning the loan secured by the 1st deed of trust stated that plaintiffs were to pay $1,000 to assist in the closing of the transaction. The February 22 instructions with respect to the loan secured by a 2d deed of trust did not call for any payment by plaintiffs.

12. Upon receipt of the documents described in ¶¶ 10 and 11, on February 24, 2013, plaintiffs sent an email to Kevin Sabey with a series of questions. Plaintiffs asked if they owed anything on the promissory note secured by the 1st deed of trust. On the same day, plaintiffs talked to Kevin Sabey in a phone conversation during which plaintiffs sought answers to their questions. With respect to the question whether they owed anything on the note, Mr Sabey responded they did not because they were paying the $1,000 in full.

13. Plaintiffs received the bank's DIL agreement on February 28, 2011. Plaintiffs signed it and returned to the bank on February 28, 2011, with a cashier's check in the amount of $1,000, by overnight mail.

14. Under the DIL, the bank agreed to accept the deed to the property "in full, final and complete settlement, accord and satisfaction of the indebtedness and the other obligations of the Borrower owing under the Loan Documents." The DIL also states that the parties agreed the indebtedness is no less than $196,009.04, plus additional amounts for accrued but upaid interest and attorney's fees owing by the plaintiffs to the bank. The closing date was set for March 7, 2011. A copy of the DIL is attached as Exhibit "A."

15. The bank cashed plaintiffs' $1,000 check on March 4, 2011.

16. Through no fault on the part of plaintiffs, the bank did not close the transaction until the end of March 2011. On March 30, 2011, plaintiffs received a call from the bank during which the

representative said the DIL papers were processed the day before. On April 8, 2011, Kevin Sabey said the file indicated the transaction as completed as of March 31, 2011.

17. On May 5, 2011, an assignment of mortgage, release of mortgage, and quit claim deeds were recorded in the office of the recorder for St Joseph County, Indiana.

18. Beginning in October 2011, defendant Bank of America began reporting to Experian, Equifax, and Trans Union that plaintiffs had been late making a loan payment due for March 2011 on the 1st loan. The bank also began reporting to Trans Union that plaintiff Eric Lovejoy had been late making the March 2011 loan payment on the 2d deed of trust.

19. The truth was that plaintiffs had never been more than 30 days past due on any of their loan payments. Payment of the March 2011 loan payments was waived by the bank as confirmed by Mr Sabey in the telephone conversation referenced in ¶ 12 and as indicated in the DIL instructions and agreement.

20. Plaintiffs began calling defendants on November 14, 2011, to dispute the mortgage loan payment late reports. Between that date and March 11, 2013, plaintiffs made at least 23 telephone calls for bank personnel asking them to correct their credit reports.

21. In September 2012, plaintiffs sent the bank written proof that its credit reporting was inaccurate. On October 23, 2012, plaintiffs received a letter from the bank stating it would not change its credit reporting.

22. In February 2013, plaintiffs sent dispute letters to Experian, Equifax and Trans Union explaining that they had never been late in making payments to Bank of America. Upon receipt of the disputes, each of the credit bureaus sent Bank of America automatic consumer dispute verification requests.

23. Upon receipt of the requests from the bureaus, the bank was obligated to conduct a reasonable investigation of the disputes. However, the bank failed and refused to conduct a reasonable investigation instead the bank reported it was correctly reporting the late payment

information to the bureaus. In March 2013, the credit bureaus reported back to plaintiffs that the bank reporting remained unchanged.

24. Despite plaintiffs' efforts, the banks has deliberately, willfully, intentionally, recklessly and negligently repeatedly failed to follow procedures that would correct the inaccurate information.

25. Plaintiffs have applied for and been denied loans and extensions of credit based on defendants' credit reporting.

26. Plaintiffs' credit reports and file have been obtained from defendants and have been reviewed many times by prospective and existing credit grantors and extenders of credit, and the inaccurate information has been a substantial factor in precluding Plaintiffs from obtaining credit.

27. As a result of defendants' conduct, Plaintiffs have suffered actual damages in the form of (a) lost credit opportunities, b) harm to credit reputation and credit score, and (c) emotional distress in the form of mental pain, anguish, humiliation, embarrassment, anxiety and frustration. Plaintiffs will continue to suffer the same for an indefinite time in the future, all to Plaintiffs' great detriment and loss.

**First Claim: Violations of the Fair Credit Reporting Act—Against Bank of America, N.A.**

28. Plaintiffs incorporate by reference ¶¶ 1-27.

29. The FCRA requires a furnisher such as Bank of America, after receiving notice from a credit reporting agency that a consumer disputes information that is being reported by a furnisher, to conduct an investigation with respect to the disputed information, to review all relevant information, to report the results of the investigation to the credit reporting agency, and, if the investigation reveals that the information is incomplete or inaccurate, to report those results to all other credit reporting agencies to which the furnisher has provided the inaccurate information.

30. Within the last two years, defendants provided inaccurate and misleading information to the credit reporting agencies.

31. The defendant bank violated sections 1681n and 1681o by engaging in the following conduct that violates 15 U.S.C. § 1681s-2(b):

(a) willfully and negligently failing to conduct an investigation of the inaccurate information that Plaintiffs disputed;

(b) willfully and negligently failed to review all relevant information concerning Plaintiffs' accounts;

(c) willfully and negligently failing to report the results of investigations to Experian;

(d) willfully and negligently failing to report the inaccurate status of the inaccurate information to the credit reporting agencies;

(e) willfully and negligently failing to properly participate, investigate and comply with the reinvestigations that were conducted by the credit reporting agencies concerning the inaccurate information disputed by Plaintiffs;

(f) willfully and negligently failing to provide the credit reporting agencies with the factual information and evidence Plaintiffs submitted to defendants that proved that the information concerning Plaintiffs' credit reports was inaccurate;

(g) willfully and negligently continuing to furnish and disseminate inaccurate and derogatory credit, account and other information concerning Plaintiffs' account to the credit reporting agencies;

(h) willfully and negligently failing to comply with the requirements imposed on furnishers of information pursuant to 15 USC § 1681s-s(b); and

32. As a result of the above-described violations of § 1681s-2(b), plaintiffs have been damaged.

**Second Claim: Violations of the California Consumer Credit Reporting Agencies Act, California Civil Code §§ 1785.25 (a) – Against Bank of America**

33. Plaintiffs incorporate by reference ¶¶ 1-32.

34. California Civil Code § 1785.25 (a) states that a "person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate."

35. California Civil Code § 1785.25 (b) states that a furnisher that determines a report to a credit reporting agency is not accurate or complete shall promptly notify the consumer reporting agency of that determination and provide corrections to the consumer reporting agency that is necessary to make the information complete and accurate.

36. California Civil Code § 1785.25 (c) provides that if the completeness or accuracy of any information on a specific transaction or experience provided to a consumer reporting agency is disputed by the consumer, the furnisher may not continue reporting the information unless it provides a notice to the consumer reporting agency that the information is disputed by the consumer.

37. The defendant bank negligently and willfully furnished information to the credit reporting agencies it knew or should have known was inaccurate.

38. The defendant bank failed to make corrections to the information it was furnishing to the credit reporting agencies.

39. The defendant bank failed to provide a notice to the credit reporting agencies that the information it was providing was disputed.

40. Based on these violations of Civil Code § 1785.25 (a), (b) & (c), Plaintiffs are entitled to the remedies afforded by Civil Code § 1785.31, including actual damages, attorney's fees, pain and suffering, injunctive relief, and punitive damages in an amount not less than $100 nor more than $5,000, for each violation as the Court deems proper.

**PRAYER**

WHEREFORE, Plaintiffs pray for judgment as follows:

1. Actual, statutory and punitive damages;
2. Injunctive relief;

3. Costs and attorney's fees; and

4. Such other relief as the Court may deem proper.

Dated: April 9, 2013.

ANDERSON, OGILVIE & BREWER LLP

By: /s/ Mark F. Anderson
Mark F. Anderson
Attorney for Plaintiffs

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues.

Dated: April 9, 2013.

ANDERSON, OGILVIE & BREWER LLP

By: /s/ Mark F. Anderson
Mark F. Anderson